AO 91 (Rev. 11/11)  Criminal Complaint

<table>
<tr><td>LODGED<br>CLERK, U.S. DISTRICT COURT<br><br>4/11/25<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ MRV _____ DEPUTY</td><td># UNITED STATES DISTRICT COURT<br>for the<br>Central District of California</td><td>FILED<br>CLERK, U.S. DISTRICT COURT<br><br>4/11/2025<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: _____ clee _____ DEPUTY</td></tr>
</table>

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| LI LIU AND SHAUI LYU | ) | Case No.   2:25-mj-02175-DUTY |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___6/1/24 to 4/9/25___ in the county of ___Los Angeles___ in the
___Central District___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1956(h) | Conspiracy to commit money laundering |

This criminal complaint is based on these facts:

See Attached

❏ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Joseph McKenzie, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___April 11, 2025___

_____
*Judge's signature*

City and state:  ___Los Angeles, CA___

Steve Kim, U.S. Magistrate Judge
*Printed name and title*

*AUSA:*  Erik M. Silber

## AFFIDAVIT

I, Joseph McKenzie, being duly sworn, declare and state as follows:

### I.    PURPOSE OF THIS AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against and arrest warrants for **Shuai LYU** and **Li LIU** for conspiracy to commit money laundering in violation of 18 U.S.C § 1956(h).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause to arrest and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II.    BACKGROUND OF AGENT

3.    I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been so employed since March 2018.  I am a graduate of the Federal Law Enforcement Center in Glynco, Georgia, where I completed the Basic Criminal Investigator Training Program and the HSI Special Agent Training Program.  I received seventeen weeks of training in the detection and investigation of violations investigated by HSI; including fraud and financial crimes including money laundering. In addition, I have received a Bachelor's Degree in Accounting

and Finance from American Intercontinental University, and a
Graduate Certificate in Forensic Accounting from George Mason
University.  I am currently assigned to the El Camino Real
Financial Crimes Taskforce, which investigates financial crimes
related to bulk cash smuggling, trade-based money laundering,
access device fraud, and other financial crimes.  I have
assisted other agents in numerous financial related
investigations in the Central District of California.

### III.   STATEMENT OF PROBABLE CAUSE

4.    Based on records, witness interviews, my review of
electronic communications, and my knowledge of this
investigation, I learned the following:

**A. Phoenix Investigation in 2024 Identifies LYU**

5.    In August 2024, HSI Phoenix received information about
a cryptocurrency investment fraud scheme involving a victim from
Phoenix, Arizona who had lost over one million dollars.

6.    In September 2024, HSI Phoenix Special Agent Patrick
Newton interviewed the victim, who stated she had lost over one
million dollars since June of 2024.  The suspected perpetrators
of this scheme, who are the subjects of this investigation, used
a web application called CLFCoin, located at h5[.]clfcoin[.]top,
where victims would log into their account to view their
"investments" and make "trades" suggested to them by the
subjects via encrypted messenger services such as Telegram and
WhatsApp.  The purpose of this web application was to convince
each victim that the money "invested" was generating large
returns to manipulate them into investing additional money.

However, when the victims tried to retrieve their funds, they were requested to pay "taxes and fees" prior to their funds being released. Victims were often told by the subjects that these "taxes and fees" could not be paid using the "profits" of their "investments," in order to induce the victims to provide and lose additional money.

7.    In October 2024, HSI Phoenix informed HSI Los Angeles that the subjects requested that the victim send them an additional $50,000 via FedEx. HSI Phoenix provided HSI Los Angeles with the shipping label used in communication with the subjects, showing a "Luna Jing" as the recipient.

8.    On or about October 11, 2024, I obtained fictitious money of the type used in motion pictures ("movie prop money") which has the appearance of real money but has the words "copy money" stamped on the front and back. I wrapped the stack of movie prop money in aluminum foil and placed it inside a small cardboard box. I wrapped the money in aluminum foil because the subjects requested it be done that way. I know from my training and experience that the foil is used to evade detection if the package is scanned or searched.

9.    On or about the same date, Los Angeles Sheriff's Department ("LASD") Detective Taylor obtained a tracker warrant signed by Los Angeles County Superior Court of California Judge Margaret M. Bernal. I placed the tracker inside the cardboard box with the foil wrapped movie prop money. I placed the small cardboard box into a white FedEx Express box, and Detective

Taylor returned the box to the FedEx store located at 2723 S. Figueroa St, Los Angeles, CA 90007 at approximately 12:30 p.m.

10.  On or about the same date, at approximately 3:30 p.m., the tracker moved from the FedEx store to an apartment complex located at 3150 Wilshire Boulevard, Los Angeles, CA 90010 ("3150 Wilshire").

11.  On or about October 15, 2024, I issued a customs summons to FedEx for subscriber information related to the FedEx tracking number found on the package containing the movie prop money.  According to the FedEx return, the following Internet Protocol ("I.P.") address was used to track the shipment on October 11, 2024: 2607:fb90:572b:490d:d1ce:f1c6:c91b:fb8a.

12.  On or about October 21, 2024, I conducted an open-source check of the I.P. address ending in fb8a, received from FedEx.  The I.P. address resolved back to T-Mobile USA Inc.

a.  On or about October 23, 2024, I issued a customs summons to T-Mobile for subscriber information related to I.P. address ending with fb8a.

b.  On or about November 1, 2024, T-Mobile identified the account, which had been active since November 28, 2022, and used the telephone number 727-877-9999.

13.  On or about November 6, 2024, I conducted a search in the Lexis Nexis Risk Solutions Accurint Virtual Crime Center for telephone number 727-877-9999.  The Accurint records showed that the telephone number was associated with **LYU**.  I checked **LYU**'s name and date of birth in a Customs and Border Protection

("CBP") database which indicated that **LYU** was a People's Republic of China ("PRC") national.

14.    On or about November 21, 2024, HSI Criminal Analyst Liz Ramos conducted a search of open source and law enforcement databases for **LYU**, and determined that **LYU** had used an address at 3150 Wilshire on immigration documents.

**B. Los Angeles Investigation in 2025 Leads to LIU and LYU**

15.    In March 2025, HSI Supervisory Special Agent ("SSA") Ryan Ribner was notified by a FedEx security investigator that, in February 2025, FedEx interdicted several packages that contained over a hundred thousand dollars in U.S. currency, which FedEx ultimately returned to the victim senders.  The investigator informed SSA Ribner of the following:

a.    The parcels were supposed to be retrieved at a FedEx store located at 800 Wilshire Boulevard, Los Angeles, California.

b.    A woman who came to pick up the parcels presented what he believed was a fictitious California driver's license in the name of "Cameron Parker."

c.    Surveillance showed that after leaving the store, the woman entered a Mercedes Benz with California license plate 7KZT366.

16.    HSI agents conducted a California Department of Motor Vehicles records check and learned that the license plate was registered to Xin Liu, 3150 Wilshire Boulevard, Apartment 1123, Los Angeles, CA 90020.  This is notable because it is the same

apartment building where the FedEx package containing the movie prop money was taken in October 2024.

17.    On or about March 6, 2025, HSI Tucson Special Agent Conan Beach notified HSI Los Angeles of a victim in Tucson, Arizona who had lost more than $60,000 since January 2025.  The subjects suspected of defrauding the victim used a purported investment web application called StarSeaCoin, located at www[.]starseacoins[.]top.

18.    In an interview with Special Agent Beach, and Internal Revenue Service Cybercrime Financial Analyst Ludwig, the victim stated that he/she was first contacted by the subjects in December 2024 via WhatsApp.  Initially the subjects told the victim that he/she had to transfer his/her crypto holdings from other exchanges to StarSeaCoin or send cash via FedEx to their associate to establish a trading account balance.  As with the CLFCoin application discussed above, the apparent purpose of this web application was to convince each victim that the money "invested" was generating large returns and to manipulate them into "investing" additional money.  The victim initially transferred his/her crypto holdings to establish a trading balance with StarSeaCoin, but later realized that the scheme was a fraud and he/she was not able to withdraw the funds.

19.    Specifically, in January 2025, the subjects convinced the victim to send cash via FedEx to deposit in their investment account.  The victim reported between January 8, 2025, and February 19, 2025, they had sent cash via FedEx approximately seven times, totaling $61,000.

6

20.   In their instructions to the victim, the subjects used various FedEx locations around Los Angeles with different recipient names; however, every FedEx shipment used the same telephone number, 626-743-9516 for the recipient.  This is the same telephone number used in connection with the October 2024 fraud discussed above.  Based on my training and experience, the similarity of the schemes and the use of the same telephone number for the recipient of funds in the Los Angeles area led me to believe that the two incidents were related.

21.  On or about February 20, 2025, the subjects advised the victim to take out a loan for $100,000 with a broker that StarSeaCoin worked with to enhance the victim's investment opportunities.  The victim accepted the loan, and the funds were deposited into his StarSeaCoin account.  The victim reached out to a StarSeaCoin customer service representative to arrange payment for the loan using funds from his StarSeaCoin account balance.  At that point the victim's account had accumulated over $300,000 in purported profits.  The victim was told he/she had to pay off the loan before they could withdrawal profits, and that they could not repay the loan with any funds in the StarSeaCoin account.  The victim was instructed that he/she would have to go to an outside source for funds to repay the loan.

22.  On or about March 21, 2025, after realizing that they had been defrauded, the victim consented to me, in an undercover capacity, taking over communications with the StarSeaCoin subjects using the victim's WhatsApp account.

23.  On or about April 3, 2025, the subjects requested a payment of $75,000 be sent to a Prime Pack & Ship store located at 338 South Western Avenue, Suite C249, Los Angeles, California 90020.  The subjects instructed that the recipient of this parcel should be "Sunny South Trading Inc." with telephone number 626-743-9516.

24.  On April 9, 2025, pursuant to a federal anticipatory search warrant that I had obtained (issued by the Honorable Steve Kim, United States Magistrate Judge), I placed a stack of movie prop money wrapped in aluminum foil inside a small cardboard box wired with a tracking device, and a break wire that broadcasts a tone through HSI issued digital radios when the box was opened.

25.  On the same date, at approximately 12:30 p.m., I returned the box to the Prime Pack & Ship store located at 338 South Western Avenue, Los Angeles, California, 90020.  I monitored the tracking device and break wire broadcast from my vehicle in the parking lot.  I informed the subjects, via WhatsApp, that the package was available for pickup.

26.  On the same date, at approximately 2:00 p.m., I observed a woman, later identified as Li **LIU**, enter the Prime Pack & Ship store.  I observed **LIU** leave the store with multiple packages and was alerted by the tracker that the package had moved.

27.  **LIU** entered the passenger side of a blue Porsche bearing California license plate number 9HTX471.  HSI Task Force Office Luis Pineda conducted a search of California Department

of Motor Vehicles records and identified the owner as **LIU**, at 3150 Wilshire Boulevard, Apartment 1123, Los Angeles, California, 90020.  This is notable because it is the same apartment building where the FedEx package containing the movie prop money was taken in October 2024, and the same apartment in that building to which the Mercedes discussed in paragraphs 15 and 16 above was registered.

28.  On the same date, at approximately 2:22 p.m. the vehicle departed the Prime Pack & Ship store, driven by a male later identified as **LYU**.  HSI agents followed the vehicle back to 3150 Wilshire, and observed **LIU** and **LYU** enter apartment 1123 carrying multiple packages at approximately 2:46 p.m.

29.  Shortly thereafter, at approximately 2:50 p.m., I was alerted via broadcast over HSI radio that the break wire had been broken, activating the anticipatory search warrant of the apartment.

30.  At approximately 3:30 p.m. HSI agents, including me, executed the anticipatory search warrant at 3150 Wilshire Boulevard, Apartment 1123, Los Angeles, CA 90020.  Among other things, the contents of the parcel I packed with movie prop money, and the tracker, were found inside the apartment.

31.  Only **LIU** and **LYU**, were present at the apartment.

32.  **LIU** was advised of her Miranda rights and consented to an interview.  Among other things, LIU stated the following:

a.  She is a PRC national currently married to a United States citizen and has a change of status to Legal

Permanent Resident pending based on that marriage. **LIU** declined to provide her spouse's name or where they lived together.

       b.   She lives at 3150 Wilshire Boulevard, Apartment 1123, Los Angeles, California 90020.

       c.   She claimed she was paid $100 per package that she retrieved.

       d.   She claimed she did not know where the money in the packages came from or where it went after. Her job was to retrieve the packages, record a video her opening the packages, and send those videos to Shuai **LYU**.

       e.   She also claimed that a person who she knows as "Tim" would retrieve the currency from her once he was alerted, via Telegram messenger. She said that Tim decided where to meet to pick up the money. She claimed that **LYU** handled the communication with Tim, and that she had him as a Telegram contact in her telephone as a backup for **LYU**.

       f.   She said the owners of the money expect the money "immediately," meaning the same day she received the package and opened it.

    33.   SSA Ryan Ribner informed me that, pursuant to the search warrant, he conducted a brief review of an Apple iPhone **LIU** identified as hers. **LIU** declined to provide her passcode for the telephone but agreed to unlock the telephone. A video on the telephone time stamped "October 11, 2024 5:24 PM", showed a female flipping through money stamped "Copy Money." This video corresponds with the date of the original controlled

delivery of movie prop money that I conducted with LASD
Detective Taylor.

34.   While reviewing the telephone SSA Ribner also
identified a message thread from "AE axian" with "Sunny south
trading inc" in the headline.  In the thread was a picture of
the brown box with UPS packing label that I sent to the subjects
on April 4, 2025, along with the sender's name, tracking number,
carrier, recipients name, and amount of expected funds
($75,000).  The photograph is shown below:



35.   SSA Ribner also informed me that, in **LIU**'s telephone,
he observed a text message with numerous Zelle payment
application notifications.  From March 19 to March 28, Zelle
notified **LIU** that Xin Liu had sent six separate fund transfers
for $10,000, $5,000, $653, $675, $500, and $400.  This
corresponds to the timeframe when the female using the alias of
"Cameron Parker" attempted to retrieve parcels from FedEx.

36.    While reviewing **LIU**'s telephone, SSA Ribner and I observed numerous photos and videos of bulk currency dating back to at least October 2024.  While reviewing **LYU**'s telephone, I observed at least 35 photos and videos of bulk currency in 2025, and more dating back to September 2024 (which is approximately when the telephone records start).  Based on what **LIU** told me and my training and experience, I believe each of these videos and photos constitute an instance in which **LIU** and **LYU** conducted an unlicensed money transmitting transaction.

37.    **LYU** was advised of his <u>Miranda</u> rights with the assistance of a Mandarin-speaking law enforcement agent and consented to an interview.  Among other things, **LYU** stated the following:

    a.    He is a PRC national,[1] and that he entered the United States as a student on a visa.[2]

    b.    He claimed he was "just having fun" with his friend, Li **LIU**, and did not open any packages.

38.    Pursuant to the search warrant, I conducted a brief review of an Apple iPhone **LYU** identified as his.  **LYU** claimed he could not remember the passcode to the telephone however the telephone was already unlocked.  I found a video time stamped "today 2:49 PM", pictured below, showing **LYU** opening the parcel

---

[1] During the search of 3150 Wilshire, agents identified a PRC passport in **LYU**'s name along with other identifying documents on the kitchen counter.

[2] According to immigration databases **LYU** has a pending asylum claim from 2020, and a pending work permit application from December 2024.  **LYU**'s prior work permit expired on May 1, 2024.

I packed with movie prop money, taking the contents out, including, unwrapping the money, and showing the money to the camera.  A still shot form that video is shown below:



39.  On the device there was also an image, pictured below, dated October 11, 2024, of the LASD tracker, and movie prop money Detective Taylor and I used in the October 2024 delivery discussed above:



40.   In the kitchen, agents also found opened and discarded shipping boxes, including the box containing the tracking device that had been opened earlier that day.

41.   On the counter in the kitchen there was also a stack of approximately $75,000 in cash.

42.   During a search of the apartment, agents found a CBP form 6051, Custody Receipt for Seized Property and Evidence with HSI case number DA02TR25DA0006 indicating U.S. currency and a cellular telephone were seized in Dallas, Texas.

43.   I conducted a search for case number DA02TR25DA0006 in HSI's case management system and found that on April 1, 2025, HSI Task Force Officers and Dallas Police Department seized $209,800 from B.J.   During the encounter B.J. stated the following:

        a.   B.J. said he was visiting Dallas for pleasure and was flying home to Los Angeles after being in Dallas for two days.  B.J. consented to a search of his backpack where TFOs found U.S. currency in a plastic bag and concealed inside two false compartment books.

        b.   B.J. said his friend dropped off the money to him in Dallas to transport it to Los Angeles.

        c.   B.J. said the money was for investing with friends, but did not provide details to the type of investment or the friends.

44.   On **LIU**'s iPhone, a message in an encrypted chat platform titled "Pinned Message #1" with Haiping Li in the title bar showed that **LIU** had sent a screen recording of the Privacy

14

Impact Assessment for the Seized Assets and Case Tracking System (SEACATS).  I know from my training and experience that SEACATS is the information system that tracks all physical inventory and dispositions of seized assets for all CBP and Immigration and Customs Enforcement operations.

45.  A message in the Mandarin Chinese language was sent back in response to the SEACATS screen recording.  HSI Task Force Officers in Chicago provided the following translation of the reply:

> I just asked the bail company.  He found out that it was a private airport in Texas these days.  In recent days, several people at the airport were arrested for carrying drugs, guns, and unlicensed smuggling.  That is, indiscriminate search for id and carry-on packages.  Two people were arrested on the same plane as the driver...  Last week, more than 2 million US dollars was confiscated at the airport.  We just asked the bail company and he told us that the airport would definitely not be available in the future.  Now can you ask the customer to call and explain according to the information on the list?  The driver's side is talking about cash for investment, and the customer may need to fill in his personal information by himself.  Let's deal with it in this way first.  There is still hope, because this money is in the Homeland Security Bureau, and the customer's own I can also find out, and I can tell him truthfully, that is, I was searched indiscriminately at the airport, and the cash was temporarily detained by them.  If they can't be taken out in the end, let's talk about compensation again. 66 and I will definitely cooperate.

46.  A search of **LIU**'s telephone found additional videos and photographs of express mail parcels bearing the name "Quinan LI" with a telephone number 626-743-9516, and parcels with the name "Sunny South Trading Inc."  Some of the parcels had an address of "3183 Wilshire Boulevard, Los Angeles, California." Further searches revealed a chat thread on encrypted

15

communication apps that included the strings "Haiping Li" and "Sunny South Trading."  The chat showed photographs of several parcels along with names, dollar amounts, and photographs corresponding to those parcels.

47.  A California business records search for Sunny South Trading revealed that it was registered with the number 6380608, with a principal and mailing address of 3090 Bristol Street, Suite 400, Costa Mesa, California.  The agent, registrar, and officer was listed as Quinan LI.

48.  Searches of **LIU**'s telephone revealed a note with a date of March 25, 2025, at 1:21 p.m. containing assorted information, including the following:

a.  A birthdate, email address, phone number, and several addresses.

b.  The address for the JPMorgan Chase Bank at 1010 N. Larchmont Boulevard, Los Angeles, California 90004.

c.  Information about a "chase business account" with a username ending in "i14" a password, and a four-digit personal identification number (PIN) for the account.

d.  The account number and routing number for the Chase account.

e.  Another username and password that contains the name "liquiunan" with a PIN.

f.  At the bottom of the note was another account with the name "Sunny South Trading Inc" and another username and password.

16

49.  SSA Ribner informed me that he found another note in **LIU**'s telephone with information on a Wells Fargo account with the name Sunny South Trading which showed emails accounts, addresses, bank account numbers and a PIN.

50.  Based on my training and experience, the information in these notes shows that **LIU** has access to and control of Wells Fargo and Chase Bank accounts in the name of Sunny South Trading, Inc., which is the same name listed on victim packages containing bulk U.S. currency.  Based on my training and experience and conversations with other agents that, with the access to the above bank accounts, **LIU** had the ability to deposit and remit wire transfers in the furtherance of the investment fraud scheme.

51.  On April 10, 2025, HSI agents queried the Internet Crime Complaint Center ("IC3") for complaints related to the bank accounts and other identifiers discovered on **LIU**'s telephone.  That search identified a complaint and report from victim "TD" who advised that he/she was the victim of an investment fraud.  TD related that, on January 23, 2025, he/she sent a wire transfer for $21,000 to a Chase Bank account in the name of Sunny South Trading Inc, with an account number ending in "5562".  This is the same account number in the note on **LIU**'s telephone.

52.  On April 10, 2025, SSA Ribner informed me that he conducted a check with the Financial Crimes Enforcement Network ("FinCEN") Money Service Business ("MSB") registration portal for **LIU**, **LYU**, Sunny South Trading, Inc; Haiping Li, Quinan Li,

17

and their respective addresses.  FinCEN records showed that none
of those individuals or entities were registered as an MSB.  SSA
Ribner conducted the same check with the California Department
of Financial Protection and Innovation, and similarly found no
record of registration.

### IV.    **CONCLUSION**

53.  Based on my training and experience, there is probable
cause to believe that **LYU** and **LIU** conspired to commit money
laundering in violation of 18 U.S.C § 1956(h).


Subscribed to and sworn before me
this 11th day of April 2025

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE

_____
                                    /s/
Joseph McKenzie, SA HSI

18